UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Yvette R. Thornton,

                        Plaintiff,

        v.

Commissioner of Social Security,[1]

                        Defendant.

**Decision and Order**

17-CV-357 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 8, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 11, 17.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption of this decision.

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

2

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Here, plaintiff's principal argument is that the ALJ did not consider the totality of clinical evidence when determining that she had the RFC for light work. Plaintiff faults the ALJ for inferring the RFC from imaging studies alone without further medical explanation. Plaintiff criticizes the ALJ for not considering her morbid obesity a severe impairment. Plaintiff then argues that the ALJ must not have considered the full record of clinical notes because he did not mention several treatment providers by name, including Dr. Huckell, Dr. Gosy, Dr. Fishkin, and Dr. Tetro. The Commissioner responds that the imaging studies in the record were not considered alone and supplement other clinical findings consistent with the ability to perform light work. Regarding obesity, the Commissioner notes that the ALJ explicitly listed obesity as a severe impairment at Step Two. [20.] The ALJ, according to the Commissioner, further considered plaintiff's obesity when determining the RFC and properly discounted obesity-related findings made by an ophthalmologist. Finally, the Commissioner cites to portions of the ALJ's decision and the clinical records to show that the ALJ did consider all of plaintiff's treatment providers, even if he did not name them.

The Commissioner has the better arguments. With respect to imaging studies, the largest paragraph on page 7 of the ALJ's decision unfortunately starts with clumsy wording that sounds as if the studies are the sole basis for deciding that "the claimant is capable of performing a range of exertionally light work." [24.] The rest of that paragraph, however, cites detailed clinical notes that discuss the studies. For example, the ALJ at page 7 cites Exhibit B1F of the record and discusses a certain MRI of the cervical spine. [24.] Exhibit B1F is actually a clinical note from Dr. Gosy, dated December 14, 2012, in which Dr. Gosy discusses the MRI. [240.] Dr. Gosy concludes the note

4

with comments that include, "Ms. Thornton is working and we want to maintain her employment status." [241.] Similarly, the ALJ at page 7 cites Exhibit B6F when discussing an x-ray of plaintiff's right hip from September 2012. [24.] Exhibit B6F, however, is not the x-ray itself. The exhibit comprises numerous clinical records including two workers' compensation examinations and reports by Dr. Zair Fishkin dated May 7 and 17, 2012. [417–578.] The exhibit includes the following notations: Plaintiff was working part-time and responded well to physical therapy [417]; Dr. Fishkin recommended a trial of physical therapy [425]; a physical therapy session on July 2, 2012 ended well, with plaintiff able to complete all exercises without any complaints [434, 445]; Dr. Cameron Huckell recommended an MRI in August 2012 with a possible discussion of physical therapy to follow [461]; Dr. Huckell recommended continuing physical therapy with a cortisone injection in October 2012 [503]; and Dr. Huckell advised in June 2013 that plaintiff needed a dedicated outpatient physical therapy program [542]. *Cf. Abarzua v. Berryhill*, ___ Fed. App'x ___, No. 18-640-cv, 2019 U.S. App. LEXIS 5835, at *3 (2d Cir. Feb. 27, 2019) (summary order) (affirming denial of benefits based on activities of daily living and "substantial medical evidence" including conservative treatment). The information in the exhibits cited by the ALJ undermine plaintiff's arguments in two ways. First, the objective clinical findings from doctors including Drs. Fishkin and Huckell are consistent with other portions of the record, cited by the ALJ, that plaintiff is capable of activities of daily living and is capable of past relevant work. *Cf. Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) (physical therapy and cortisone injections improved plaintiff's condition and contributed to substantial evidence of no disability); *Martinez v. Comm'r*, No. 13CIV159KMKJCM, 2016 WL 6885181, at *14 (S.D.N.Y. Oct. 5, 2016) (finding that "activities of daily living further support the ALJ's determination that Plaintiff was capable of light work"), *report and recommendation adopted*, No. 13CV159KMKJCM, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016);

5

*Lacy v. Astrue*, No. 11-CV-4600 MKB, 2013 WL 1092145, at *14 (E.D.N.Y. Mar. 15, 2013) (RFC of light work supported by substantial evidence, including by "prescription of physical therapy, home exercise, and cortisone injections"). Second, the information in the exhibits shows plainly that the ALJ did in fact use objective clinical information from Dr. Huckell, Dr. Gosy, Dr. Fishkin, and Dr. Tetro, even if those doctors' names do not literally appear on the face of the ALJ's decision. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration."); *Zokaitis v. Astrue*, No. 1:10-CV-30, 2010 WL 5140576, at *9 (D. Vt. Oct. 28, 2010) ("While the ALJ did not refer to the treatment notes of these doctors by name in his written decision, his decision shows that he considered them."), *report and recommendation adopted*, No. 1:10-CV-00030-JGM, 2010 WL 5140063 (D. Vt. Dec. 13, 2010). Substantial evidence thus supports the Commissioner's position that the ALJ considered the entire record and that the weight of the record supports the ALJ's RFC finding.

With respect to plaintiff's argument about obesity, the Court agrees with the Commissioner that the ALJ must have considered the condition because he declared it a severe impairment. Additionally, the exhibits cited above and other exhibits indicate that plaintiff was capable of various activities despite any problems related to obesity. Substantial evidence thus supports the ALJ's decision to acknowledge plaintiff's obesity while also noting her activities and her decision to manage various symptoms through conservative treatment without any surgery. [25.]

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 17) and denies plaintiff's cross-motion (Dkt. No. 11).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                                       */s/ Hugh B. Scott*
                                                                       Hon. Hugh B. Scott
                                                                       United States Magistrate Judge

DATED: March 21, 2019